UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY REEDY,

        Plaintiff,

                                                       Case No. 15-11401

vs.

                                                       HON. GEORGE CARAM STEEH

RICH TRANSPORT, LLC, et al,

        Defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT (DOC. 11)

This matter is before the court on Defendants' motion for partial summary judgment. On February 18, 2015, Plaintiff, Terry Reedy (Reedy), filed a complaint in Genesee County Circuit Court in Michigan claiming first that Defendants, Rich Transport, LLC, Rich Logistics, LLC, and Rich Logistics Holdings, LLC, violated the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.* (ELCRA), the Bullard-Plawecki Employee Right-to-Know Act, M.C.L. § 423.501, *et seq.* (ERA), and the Worker's Disability Compensation Act, M.C.L. § 418.101, *et seq.* (WDCA). Reedy alleges that Defendants discriminated against him based on his marital status, failed to provide him with his employment records as required by law, and retaliated against him for seeking medical services for a work-related injury.

Defendants removed the case to this court on April 16, 2015. Defendants then filed the instant motion for partial summary judgment as to the first and third claims involving the ELCRA and the WDCA. Reedy filed a response to that motion, and Defendants filed a reply. The court granted Reedy's motion to file a sur-reply, and he

did so. The court has been fully briefed and GRANTS Defendants' motion for partial summary judgment.

## STATEMENT OF FACTS

Reedy is a truck driver who worked for Defendant, Rich Logistics, LLC, from October 2014 to February 3, 2015. During his employment, Reedy had a designated route, which started in Holland, Michigan, made stops in Grand Rapids, Michigan and Alexandria, Indiana, and ended in Holland, Michigan. The shift lasted from 2:00am until 2:00pm. During his shift, Reedy reported to Oliver Arce (Arce), his dispatcher and supervisor. Other than a speeding ticket Reedy received on October 31, 2014, Reedy did not have any disciplinary problems before the incident at issue in this case.

On Wednesday January 27, Reedy slipped and injured his back at Defendants' terminal in Alexandria, Indiana while trying to disconnect a trailer from his truck. Reedy told Cindy Chandler (Chandler), the Alexandria terminal manager, about the incident. She told Reedy to contact his supervisor, Arce. Reedy contacted Arce about his injury and asked to see a doctor. Arce told Reedy that he would check and call him back. Later that day, Arce told Reedy that he should receive forms to fill out and submit regarding his injury. Reedy testified that he never received the forms. Reedy also testified that he contacted Arce again, and Arce told him that there was nothing he could do.

Some time after the incident, Arce informed the Director of Safety, Sam Lister (Lister), that Reedy had injured himself. Lister told Arce that he would call Reedy, but Reedy testified that he did not speak to Lister about the incident. Chandler testified that she called Lister and spoke to him about Reedy's injury, but Lister testified that he did

not remember that conversation. Lister testified that he sent the injury forms to Reedy to fill out and return, but he admitted in his deposition that he "dropped the ball" by not submitting Reedy's paperwork to the Workers' Compensation carrier right away. (Doc. 13-5, Pg ID 419 ¶ 32:10-16). Lister also testified that he never received those forms back from Reedy. In addition, Lister was not able to produce copies of the forms he allegedly sent to Reedy when requested to do so at his deposition.

Reedy also alleges that Defendant, Rich Transport, LLC, also did not have Worker's Compensation coverage when Reedy's injury occurred. According to Reedy, the coverage for January 1, 2015 through January 1, 2016 was not signed until September 1, 2015. So, although the policy retroactively covers the date Reedy was injured, it was not effective until months after his injury. Defendants claim that this document is merely evidence of the Workers Compensation policy. The date and signature on the document reflect when the evidence of the policy was requested, not the effective date.

The morning after his injury, Thursday January 29, 2015, Reedy started on his route at 2:00am. Reedy's wife had moved out of the house in December 2014, leaving Reedy to care for five children. Reedy and his wife were married during the time period at issue, but she did not move back in with him until March 2015. Reedy hired a babysitter to take care of his kids while on his route because school was cancelled. Reedy spun out due to a blizzard and icy conditions on the road. Around 6:00am, Reedy did not feel safe to drive; so he told night dispatch about the conditions. Night dispatch told Reedy to leave the truck at the rest stop and go home. Reedy parked the truck at a rest stop and called a friend to pick him up and drive him home. When Reedy

arrived, he sent the babysitter home. Arce testified that Reedy did not make first contact with dispatch. Rather, according to Arce's testimony, Arce called Reedy asking for an estimated time of arrival to his next destination because Reedy was late delivering his next shipment. At that point, Reedy told Arce that he had left the truck at a truck stop because of the weather conditions and received a ride home.

At 10:00AM on Thursday January 29, 2015, Arce called to let Reedy know that the roads were clear and that he needed to return to the truck. Reedy told Arce that he would need to find a babysitter for his kids and that he would call Arce back. Reedy could not find a babysitter. Reedy testified that when he told Arce he could not get the truck because he couldn't find a babysitter, Arce was upset and hung up on him. At 11:00am, Lister called Reedy. Reedy testified that the first question Lister asked him was whether he was a single parent. Reedy answered in the affirmative, and Lister told Reedy that if Lister would have known, Lister would not have hired Reedy. Lister repeated the statement and hung up. Reedy testified that he also told Lister that both Arce and Chandler knew about his single parent status.

Reedy testified that he was not scheduled to work on Friday January 30, 2015. Defendant, Rich Transport, LLC, does not do business on the weekends. Reedy testified that he did not have any contact with Arce or Lister that Friday or Saturday, and the truck remained at the truck stop. According to Reedy, on Sunday February 1, 2015, "Mike," another driver employed by Defendant, called Reedy saying that he was going to pick up the truck Reedy left at the truck stop. "Mike" also told Reedy that Reedy was now on medical leave. The next day, Monday February 2, 2015, Reedy called Lister

about the situation. Lister confirmed that "Mike" would be picking up the truck. He also told Reedy that he was not on medical leave and was instead terminated.

In contrast with Reedy's testimony, Arce testified that, when he spoke to Reedy on Thursday January 30, 2015, he told Reedy that he needed to go back to his truck to disconnect the trailer so that another driver could pick up the trailer and continue on the route. According to Arce, Reedy drove with his kids in his personal vehicle to the truck stop and disconnected the trailer from his truck. Reedy then left his truck at the truck stop and drove home in his personal vehicle. The other driver picked up the trailer and left an empty trailer for Reedy to pick up and continue his route. Arce also testified that he spoke to Reedy on Friday January 30, 2015, asking Reedy whether he had picked up the truck and trailer from the truck stop. According to Arce, Reedy told him that he had not yet picked up the truck.

Reedy never received permission from Arce or Lister to see a doctor. Reedy, nevertheless, went to the hospital sometime between February 1, 2015 and February 3, 2015 to address his back injury. The hospital contacted Defendant to inquire about payment, but payment was denied. On February 18, 2015, Reedy filed the instant suit.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248,

252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

**A. Discrimination Based on Marital Status (Count I)**

Reedy claims that Defendants discriminated against him based on his marital status in violation of the ELCRA. The ELCRA states: "An employer shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment . . . because of . . . marital status." M.C.L. 32.2202(1)(a). The ELCRA does not define "marital status." Plaintiff may prove discrimination by direct or circumstantial evidence. *Hazel v. Ford Motor Co.*, 464 Mich. 456, 520 (2001). Direct evidence is "'evidence which, if believed requires the conclusion that discrimination was at least a motivating factor in the employer's actions.'" *Id*. Where plaintiff's claim is based on circumstantial evidence, the court relies on the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-07 (1973). Under that analysis, Reedy must first establish a *prima facie* case under this statute by showing 1) he is a member of a protected class, 2) he suffered an adverse employment action, 3) he was qualified for the job, and 4) he was terminated under circumstances that give rise to an inference of unlawful discrimination. *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005)*; Wilcoxon v. Minnesota Min. & Mfg. Co.*, 597 N.W.2d 250, 257 (Mich. Ct. App. 1999). Should Reedy satisfy the above elements, Defendants bear the burden of proving a legitimate, nondiscriminatory business reason for terminating Reedy. *McDonnell Douglas*, 411 U.S. at 802. Then, if Defendants meet this burden, Reedy must prove by a preponderance of the evidence

that the legitimate reason offered by Defendants was a pretext for discrimination. *Id.* at 807. "There are three ways a plaintiff can establish that a defendant's stated legitimate, nondiscriminatory reasons are pretextual: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Dubey v. Stroh Brewery Co.*, 462 N.W.2d 758, 760 (1990).

Reedy does not present direct evidence of discrimination. Instead, he offers two instances of indirect evidence of discrimination. The first is Lister's alleged statement that, if he had known Reedy was a single parent, Reedy "would not have gotten that job." (Doc 13-2, Pg ID 363 ¶ 24:13-15) (emphasis added). Reedy argues that this is direct evidence of discrimination and should, therefore, be enough to allow Reedy to withstand summary judgment as to this claim. Lister did not, however, say that he was terminating Reedy *because he was a single parent*, only that, had he known Reedy was a single parent at the time of hiring, he would not have been hired. Additionally, Lister's statement was not made when Lister terminated Reedy. *See DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 839 (2001) (finding that an employer's statement "you're too old for this shit," was direct evidence of the employer's intent to demote the employee based on his age because it was allegedly made during the discussion in which the employee was demoted). The second instance Reedy uses to demonstrate discrimination is Arce allegedly telling Reedy, "I don't give a fuck about your kids. Get your fucking ass in that truck because that's where we need to have you." (Doc. 13-2, Pg ID 366 ¶ 36:18-20).

Given that Reedy only offers indirect evidence of discrimination, the *McDonnell Douglas* framework applies. The parties agree that Reedy satisfies the second and third elements required to demonstrate a *prima facie* case of discrimination, namely that he suffered an adverse employment action and was qualified for the job. The primary disagreement between the parties is whether Reedy is in fact a member of the protected class, the first element of a *prima facie* case. Reedy claims that he was terminated because he was a single parent. Defendants read the Michigan Supreme Court's decision in *Miller v. C.A. Muer Corp.* as construing the ELCRA's use of the term "marital status" narrowly to mean only "*whether* a person is married." 362 N.W.2d 650, 653–54 (1984). Defendants allege that, because Reedy was married at the time of his termination, he is not a member of the class. *Miller*, however, must be read in the context of the anti-nepotism policy it was addressing. In *Miller*, plaintiff was required by company policy to quit his job, be terminated, or transfer to another location after he married his co-worker. In deciding the case, the *Miller* court paid particular attention to the legislative intent of the ELCRA saying:

> Civil rights acts seek to prevent discrimination against a person because of stereotyped impressions about the characteristics of a class to which the person belongs. The Michigan civil rights act is aimed at "the prejudices and biases" borne against persons because of their membership in a certain class . . . and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases.
>
> By including marital status as a protected class, the Legislature manifested its intent to prohibit discrimination based on *whether* a person is married.

*Miller*, 362 N.W.2d at 362-63 (emphasis in original). The *Miller* court was careful not to interpret the term "marital status" too broadly so as to include people not intended by the legislature. *Id.* The court, therefore, concluded that, with regard to anti-nepotism

policies, "[a]bsent a more specific manifestation of legislative intent . . . the prohibition of employment discrimination on the basis of 'marital status' was not meant to protect a right to be employed in the same department as one's spouse." *Id.* at 362.

*Miller* dealt with a very different set of facts from the matter at issue. This court, consequently, does not find the *Miller* court's seemingly narrow language dispositive. Rather, the court finds instructive the *Miller* court's consideration of the legislature's intent in passing the ELCRA, specifically the legislature's concern with "stereotyped impressions." One "stereotyped impression" of single parents is a need for child-care that married couples do not need because they share the responsibility of caring for their children. The discrimination that Reedy alleges is precisely the kind of discrimination the legislators who enacted the ECLRA sought to prevent by protecting individuals based on "marital status." *See Wojan v. Alcon Labs., Inc.*, No. 07-11544, 2008 WL 4279365, at *11 (E.D. Mich. Sept. 15, 2008) (finding that a single parent who alleged that she was discriminated against in part for her childcare arrangements was a member of the class and had presented a *prima facie* case of discrimination).

Defendants also argue that, because Reedy was married during the time period at issue, he cannot be included in the class of single people. Reedy, however, does not need to have actually been single at the time of the incident to be included in the class. Rather, Defendants' perception of Reedy's marital status is enough. *See Kallabat v. Michigan Bell Tel. Co.*, Case No. 12-15470, 2015 WL 5358093, at *3-4 (E.D. Mich. June, 18, 2015) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002)) (applying perception theory in the context of a religious discrimination case). It is clear from Lister's alleged statements that Lister believed that Reedy was not married. This

-10-

perception is enough to include Reedy in the protected class. For the reasons stated above, the court finds that Reedy has presented a *prima facie* case of discrimination.

Defendants proffer job-abandonment as a legitimate, non-discriminatory reason for terminating Reedy. According to Defendants, Reedy "voluntarily terminated his employment . . . . [and] had performance issues that could have led to termination." (Doc. 13-7, Pg ID 494). Reedy insists that job-abandonment is merely a pretext for discrimination. Defendants' employee handbook defines job-abandonment as follows: "absence without proper notification is considered abandonment of position and is considered a voluntary termination without notice." (Doc. 13-6, Pg ID 441). According to Defendants, Reedy did not notify them that he was going to leave his truck at the truck stop before he did so. Reedy also failed to return to the truck when requested. Defendants argue that Reedy's actions led them to determine that he abandoned his job and had voluntarily terminated himself. However, if Reedy's testimony is to be believed–as it must at the summary judgment stage–Reedy did contact night dispatch to let them know of the road conditions, and night dispatch told him that he could park his truck at the rest stop and go home. So, under the definition of job abandonment provided by Defendants' handbook, Reedy did not abandon his job by leaving his truck at the truck stop. Reedy did, however, fail to return to work when Arce requested that he do so. This could have been considered job abandonment by Defendants.

In addition, the handbook creates an at-will employment situation, which enables Defendants to terminate their employees "with or without cause, at any time without prior notice . . . ." (Doc. 13-6, Pg ID 432). Although the handbook lays out a progressive discipline policy, it reserves for the Defendants "the right to skip any and all steps in the

progressive discipline procedure and suspend or terminate an employee for a first offense . . . ." (*Id.* at 456-57). Therefore, even taking Reedy's accounting of the facts as true, he failed to return to his truck Thursday January 29, 2015 when he was told to do so by Arce. Failing to return to work when asked is enough for an employer to terminate an at-will employee. Reedy has the burden of demonstrating pretext, and he has not done so here.

### B. Retaliatory Discharge (Count III)

Reedy next claims that Defendants violated the WDCA by retaliating against him for seeking medical services under the WDCA. The WDCA makes it illegal for an employer to

> discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

M.C.L. § 418.301. Reedy bears the burden of demonstrating a *prima facie* case of retaliation by showing

> (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under MCL 418.315(1) were causally connected.

*Cuddington v. United Health Servs., Inc.*, 826 N.W.2d 519, 525 (Mich. Ct. App. 2012).

Reedy again offers indirect evidence of retaliation; so the *McDonnell Douglas* burden shifting analysis applies. Reedy must first demonstrate a *prima facie* case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-07 (1973). Defendants insist that Reedy did not seek treatment until after he was terminated; so

-12-

they could not have retaliated against him on that basis. While Reedy did not visit a doctor while employed by Defendant, he did immediately notify his supervisor that he was injured and wanted to see a doctor, thereby asserting his right under the WDCA and informing his employer. In doing so, Reedy satisfied the first two elements of a *prima facie* case. It is undisputed that Defendants took an adverse employment action against Reedy; so the third element is also satisfied.

As to the fourth element, Reedy claims that two circumstances prove the causal connection. First, Reedy alleges that Defendants did not have Worker's Compensation insurance coverage at the time Reedy was injured. To support this assertion, Reedy points to a document showing the effective dates of the policy as January 1, 2015 through January 1, 2016. (Doc. 13-8, Pg ID 500). The document itself, however, was signed and dated September 1, 2015. Assuming the policy did not go into effect until September 1, 2015, Defendants would have had to pay out of pocket for Reedy's injuries. Reedy alleges this a potential motive for his termination. Defendants, on the other hand, claim that the policy was in effect when Reedy was injured. Defendants insist that the document Reedy points to as evidence is merely proof that the policy is in effect, not the document that put the policy into effect. The document itself is titled "Evidence of Workers' Compensation Insurance." (*Id.*) It is clear to the court that Defendants' interpretation is correct. Defendants had Worker's Compensation Insurance during the time period in question.

Second, Reedy uses Lister's "shifting and inconsistent testimony" as indirect evidence proving the causal connection. Defendants argue that Lister's testimony was not inconsistent and that Reedy misunderstands the difference between WDCA and

OSHA's reporting requirements. Upon reading Lister's testimony, the court agrees that it is not inconsistent. Because Reedy has not demonstrated a causal connection between his seeking medical attention under the WDCA and subsequent termination, Reedy has not established a *prima facie* case of retaliation under the WDCA.

Even assuming *arguendo* that Reedy has established a *prima facie* case of retaliation under the WDCA, he has not demonstrated that the legitimate, non-discriminatory reason proffered by Defendants is pretextual. As discussed above, Defendants claim they terminated Reedy because he failed to return to work when Arce requested that he do so. Reedy bears the burden of proving pretext. Looking at the record as a whole, Reedy has not put forth sufficient evidence to demonstrate pretext.

IT IS ORDERED that summary judgment as to Counts I and III of Reedy's complaint is GRANTED.

Dated: August 24, 2016

                                               s/George Caram Steeh
                                               GEORGE CARAM STEEH
                                               UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 24, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk